**142**

EMPLOYERS INSURANCE OF
WAUSAU, Appellant,

v.

Joyce MARTINEZ and Marguerite Brookings (individually and on behalf of all others similarly situated); Clifford Amos; Robert Copley; Richard T. Hunter; Charles M. Alexander, Jr.; William A. Kinman; Clayton Logsdon; Drury Malloy; John W. Koernner; Addah S. Herdt; and Margaret A. Myer, Administrator of the Estate of Ralph Allen, deceased, (individually and in their official capacities as Officers and Directors of Louisville Crematory and Cemeteries Company, Inc.); Lawrence R. Handley, Sr.; Mary Handley; Betty Jo Handley; Carolyn Graves; Elaine Hickman; Lawrence Handley, Jr.; James Lee Handley; Marcus Ray Handley; Gregory Handley; Charles Handley; Marie Cox; Norma Mitchell; Patricia Effinger; Louisville Crematory and Cemeteries Co., Inc.; Omnia Church of God, Inc.; Christ Church United Methodist, Inc.; Karl E. Rothrock; Unknown Trustees of Trinity Temple United Methodist Church, Appellees.

No. 1999-SC-1008-D.

Supreme Court of Kentucky.

May 24, 2001.

As Modified on Denial of Rehearing
Sept. 27, 2001.

Elizabeth U. Mendel, Woodward, Hobson & Fulton, LLP, Lexington, for Appellant.

Cecil Davenport, Leesburg, FL, David S. Davis, J. Leonard Rosenberg, Laura L. Spaulding, Perry Adanick, C.A. Dudley Shanks, Gary R. Hillerich, Randolph Noe, Mark C. Webster, Grover C. Potts, Jr., Wyatt, Tarrant & Combs, Mary Janice Lintner, Louisville, Garry R. Kaplan, Lexington, for Appellees.

GRAVES, Justice.

■ This Court granted discretionary review to resolve the issues of whether an insurance policy's exclusion of coverage for willful violation of a penal statute requires a criminal conviction of an insured in order for the exclusionary clause within the insurance policy to be invoked, even though the exclusion contains no such requirement. We hold that the provisions of the insurance policy do not require that the insured be convicted of the offense. The insured's knowing violation of the penal statute is sufficient to invoke the exclusionary clause.

This case involves a claim for civil damages, arising from cemetery mismanagement and misconduct by the Louisville Crematory and Cemeteries Company, Inc. (hereinafter, "LCC"). Since the early 1900s, the cemetery had interred bodies in already occupied graves, with as many as seven infants being discovered in one site. In some circumstances, the cemetery removed remains and headstones to make room for the more recently departed. Excavations suggest that the improper practices had occurred since 1907, when the site reached maximum capacity, and that some 80,000 individuals had been buried in a cemetery designed to hold 15,000. Although the cemetery's corporate personnel, Appellees herein, faced criminal charges, the charges were dismissed when the defendants agreed to participate in a diversion program.

■ Appellant, Employers Insurance of Wausau, issued several policies to the cemetery corporation and was allowed to intervene in a subsequent civil suit to obtain a ruling on whether it owed coverage. At issue is an exclusion that reads:

> **Exclusions.** This insurance does not apply:
>
> . . .
>
> (B) To bodily injury caused by willful violation of a penal statute or ordinance committed by or with the knowledge of an insured or of a manager employed by the named insured.

We note that the above exclusion applies to bodily injury only and does not apply to property damage.

Jefferson Circuit Judge Ken Conliffe granted Appellant's motion for summary judgment. He noted that the cemetery acknowledged the practice of overburial:

> [T]he parties also agree that the practice of overburying the cemetery, reusing grave sites, removing remains and memorials from graves, digging in occupied graves, and selling already-occupied graves, as well as the other alleged practices in this claim, were accepted and established practices occurring in the LCC cemeteries since the turn of the century, and that such actions were obviously intended and done with the knowledge of the officers and directors of the cemetery corporation; however there is a dispute as to whether the officers and directors specifically named

in this proceeding were aware of and accepted such practices.

Judge Conliffe stated that the determination of whether the exclusion was applicable depended on whether the defendants' actions would be considered willful violations of certain specific statutes. (KRS 525.110, desecration of venerated objects, second degree; KRS 525.115, violating graves; KRS 525.120, abuse of a corpse), but found that the insurance policy provisions did not require a conviction of one or more of these offenses. As these actions were: (1) obviously intentional, and (2) done with the cemetery corporation's officers' and directors' knowledge, the trial court found that the coverage under the policy was excluded:

> Viewing the underlying stipulated facts, LCC, at some point in time, through its officers and directors, did accept and adopt the practices of over-burying the cemetery, [etc.] Accepting and adopting such practices would clearly be a willful violation of a penal statute committed by or with the knowledge of the officers and directors of LCC. . . .

> Since it is admitted for purposes of this motion that the alleged acts were willfully committed by or with knowledge of the officers and directors of LCC, Wasau's cemetery professional liability coverage is excluded.

The Court of Appeals reversed, basing its decision on *Healthwise of Kentucky, Ltd. v. Anglin*, Ky., 956 S.W.2d 213 (1997), which dealt with exclusions for committing a crime and being under the influence of alcohol ("legal intoxication as defined by Kentucky law", according to the policy). *Healthwise* held that the term "crime" did not exclude coverage under the facts of the case because the wrongful acts mentioned in the policy, including drag-racing, were traffic violations, and qualified neither as felonies nor as misdemeanors. According to the Kentucky Penal Code, "crime" is defined as a misdemeanor or a felony. KRS 500.080(2). *Healthwise* also held that the term "under the influence" did not require exclusion under the facts because this term referred to a status and not an act. That status is attained when there is an adjudication of intoxication at a criminal trial.

In the instant case, the Court of Appeals found that coverage existed pursuant to the holding in *Healthwise*, because defendants are presumed to be innocent of committing a crime until they are proven guilty beyond a reasonable doubt in a criminal trial. Because Appellees never answered the charges in court, this would never happen.

We agree with Appellant that the Court of Appeals incorrectly interpreted and misapplied *Healthwise, supra*, and that it is inappropriate to find coverage in a policy that is meant to cover professional errors or mistakes, when the claims made arise from deliberate and systematic wrongful acts. The criminal conviction which the Court of Appeals would require is not expressed by the terms of the policy. We required an adjudication of the alcohol intoxication "status" in *Healthwise, supra*, because, while the use of alcohol alone did not trigger the exclusion, intoxication did. Because intoxication was not defined expressly in the penal code, it required a court determination. In this case, no question exists as to whether LCC violated a penal statute; such violations were admitted. This case is analogous to *Travelers Indemnity Company v. Nieman*, Ky. App., 563 S.W.2d 724 (1977), in which, under a similar exclusion, two pharmacists were denied coverage after they pled guilty to violations stemming from illegally dispensing amphetamines. The exclusion applies to LCC as clearly as the exclusion

applied to the pharmacists in *Travelers Indemnity, supra.*

Judge Conliffe, as part of his grant of summary judgment, made a determination that the violations were willful, based on the almost one century of overburial. Although we noted in *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance, Co.,* Ky., 814 S.W.2d 273 (1991), that questions of intent are usually more appropriately left for the fact-finder and not for disposal in summary judgment, we did not foreclose the possibility. We stated, "Summary judgment can be proper on any issue including state of mind questions such as intent and expectation. Generally when any claim has no substance or controlling facts are not in dispute, summary judgment can be proper." *Id.* at 276 (internal citations omitted). It was within Judge Conliffe's discretion to determine that violations committed for such a length of time, which evidence showed were actually described in procedures initiated by the directors, were undertaken willfully.

■■■ It is settled law in Kentucky that insurance companies are strictly accountable for the language in their policies because they are generally standard-form contracts without the option of arms' length negotiations with the insureds. *See Wolford v. Wolford,* Ky., 662 S.W.2d 835, 838 (1984). In instances of ambiguity, such contracts are construed against the insurer. However, in cases such as this, where the insureds' actions are exactly the type of actions envisioned by the insurer when it drafted the unambiguous exclusion, we see no reason to rewrite the parties' contract to provide coverage. Accordingly, we find that the Court of Appeals misapplied *Healthwise of Kentucky, Ltd. v. Anglin, supra,* when it determined that an insurance company owed coverage to a corporation whose directors and officers admittedly violated the penal code.

We find the trial court's summary judgment appropriate despite the fact that an evidentiary question exists as to whether the LCC officers and directors specifically named in this lawsuit were complicit in the overburial scheme or whether the practice is a historical one which did not occur during the tenure of the current officers and directors. At trial on Appellee-plaintiffs' claims for intentional infliction of emotional distress, a jury will have only two (2) options—(1) to find for the Appellee-plaintiffs by finding liability on behalf of these named directors; or (2) to find that these directors and officers were not involved and return a verdict in favor of the Appellee-defendant directors and officers. Regardless of the verdict reached, Appellant owes no coverage under its cemetery professional liability coverage policy. If the Appellee-defendant directors and officers participated in the scheme of overburial, the exclusion denies them coverage. If they did not participate, Appellant has no vicarious liability under the policy.

We reverse the Court of Appeals and reinstate the judgment of the Jefferson Circuit Court. Indeed, in the circumstances shown in this case, the circuit court properly determined that Louisville Crematory and Cemeteries Company, Inc., intentionally acted in a manner that resulted in injury.

COOPER, KELLER, and WINTERSHEIMER, J.J. concur.

JOHNSTONE, J., dissents in a separate opinion in which LAMBERT, C.J., and STUMBO, J., join.

JOHNSTONE, Justice, dissenting.

After concluding that the exclusion at issue in this case does not require a criminal conviction before it becomes applicable, the majority opinion rather perfunctorily states, "the circuit court properly deter-

mined that Louisville Crematory and Cemeteries, Inc. intentionally acted in a manner that resulted in injury." In my view, this statement has no relation to whether the exclusion applies to the facts of this case. I conclude that the exclusion does not apply, and therefore, I respectfully dissent.

The exclusion states:

This insurance does not apply ... to *bodily injury* caused by a willful violation of a penal statute or ordinance committed by or with the knowledge of an insured or of a manager employed by the named insured.

(Emphasis added).

The above exclusion does not turn on whether an insured intentionally caused injury. Rather, the exclusion only applies if a violation of a penal statute occurs during the applicable coverage period and that violation was willfully committed by a director, officer, or other person covered by the policy. The trial court made no such finding.

In support of its conclusion that a penal statute had been willfully violated, the trial court stated:

Viewing the underlying stipulated facts, LCC, *at some point in time*, through its officers and directors, did accept and adopt the practices of overburying the cemetery, reusing grave sites, removing remains and memorials from graves, digging in occupied graves, and selling already-occupied graves. Accepting and adopting such practices would clearly be a willful violation of a penal statute by or with the knowledge of the officers and directors of LCC.

*Memorandum and Order*, 89–CI–05256 c/w 90–CI–01480 (Jefferson Circuit Court entered May 20, 1997) at 14 (emphasis added). This analysis misses the point.

As noted by the trial court, the applicable period of the cemetery professional liability insurance coverage is from September 1, 1983, through September 1, 1987. But the trial court merely found that a penal statute had been violated *at some point in time*. Further, rather than finding that a statute had been violated by a person insured under the policy at issue, the trial court's findings state that "there is a dispute as to whether the officers and directors specifically named in this proceeding were aware of and accepted such practices." *Id.* at 7. The trial court's findings of fact do not support the conclusion that an insured violated a penal statute during the applicable coverage period; the findings of fact do not support the trial court's conclusion of law that the exclusion at issue applies in this case. The summary judgment in this case should be reversed.

More importantly, I believe that the trial court erred as matter of law in concluding that the exclusion in question applies to the underlying plaintiffs' claims for intentional infliction of emotional distress. The exclusion states that "this insurance does not apply to ... *bodily injury* ...." (Emphasis added). As defined in the policy itself, *bodily injury* means "sickness or disease sustained by any person which occurs during the policy period including death at any time resulting therefrom." Under Kentucky law, the tort of infliction of intentional distress does not depend on the occurrence of bodily injury to be actionable.

In *Craft v. Rice*, Ky., 671 S.W.2d 247, 249 (1984), we held:

The basis of the cause of action is intentional interference with the plaintiff's rights causing emotional distress, with or without personal injury in the traditional sense. If there has been physical injury with pain to the body or mind, it

is incidental to the emotional distress rather than essential to the cause of action as is the case in an action for personal injury. *The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference.*

*Id.* at 249 (emphasis added).

The exclusion in question applies only to "bodily injury." The exclusion does not, and cannot under Kentucky law, apply to the plaintiffs' claims for intentional infliction of emotional distress. A number of jurisdictions are in accord and hold that the term "bodily injury" in insurance contracts does not encompass claims for mental injury. *See, e.g., Continental Casualty Co. v. Synalloy Corp.,* 667 F.Supp. 1550 (S.D.Ga.1985); *Aim Insurance Co. v. Culcasi,* 229 Cal.App.3d 209, 280 Cal.Rptr 766 (1991); *Weaver v. Motorists Mutual Insurance Co.,* 68 Ohio App.3d 547, 589 N.E.2d 101 (1990); *Provident Life & Accident Insurance Co. v. Campbell,* 18 Tenn. App. 452, 79 S.W.2d 292 (1934). In holding the opposite today, I believe Wausau has won a battle that may lose future wars.

I would affirm the Court of Appeals, though on different grounds.

LAMBERT, C.J., and STUMBO, J., join this dissenting opinion.