NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0452n.06

Nos. 10-3866, 10-3867

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***May 01, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MEDICAL PROTECTIVE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| GREGORY G. DUMA, | ) | |
| | ) | OPINION |
| Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHELLE HEINRICH; DENNY HEINRICH; | ) | |
| CAMERON HEINRICH, | ) | |
| | ) | |
| Intervenors Defendants-Appellants. | ) | |

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Medical Protective Company, Dr. Gregory Duma's professional liability insurer, was contractually obligated to indemnify Duma for his malpractice liability in delivering Michelle Heinrich's child while intoxicated unless, under a policy exclusion, the damages were "in consequence of the performance of a criminal act." The insurer sought to disclaim coverage and the district court granted it summary judgment on the ground that Duma's actions constituted the crime of wanton endangerment under Kentucky law. Because a finding of wanton endangerment was properly based upon Duma's admissions, we must affirm the judgment of the district court.

## I. FACTS

In July 2005, Gregory Duma, a physician, applied for and was issued professional liability insurance by Medical Protective Company ("MPC"). The policy included an exclusion stating that it did not cover "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act."

Duma was employed by St. Elizabeth Medical Center in Edgewood, Kentucky. On the morning of October 23, 2005, he examined Michelle Heinrich and induced labor. He then left the hospital and proceeded to drink a large quantity of vodka in a nearby park. He returned to the hospital that afternoon to deliver Heinrich's baby, Cameron Heinrich. Both child and mother suffered labor-related injuries. During the delivery, Duma's behavior was ordinary enough that no one stopped him from delivering Cameron. After the delivery, however, it was noticed that Duma smelled of alcohol, and so a blood alcohol test was administered. The test recorded a blood alcohol content of .27, well above the Kentucky legal limit of .08.

The Heinrich family sued Duma and the hospital in state court and MPC defended Duma. The jury found both Duma and the hospital at fault, and assigned punitive damages against Duma. The jury instructions provided that punitive damages were allowed only if the jury found that Duma had acted in reckless disregard for the lives or safety of the Heinrichs.

In October 2008, MPC filed a complaint in district court asking the court to rescind and hold void Duma's professional liability policy because he did not disclose his alcoholism, or, in the alternative, to find that MPC had no duty to indemnify Duma in the Heinrich litigation because the

policy excluded damages resulting from a criminal act. MPC argued that Duma's actions constituted wanton endangerment, a misdemeanor under Kentucky law. *See* Ky. Rev. Stat. § 508.070(1); Ky. Rev. Stat. § 501.020(3). All parties agreed that Kentucky law applied to the case. Michelle Heinrich, her husband Denny Heinrich, and Cameron Heinrich intervened in the case the following year.

Both sides moved for summary judgment and MPC's motion was granted. The district court held that Duma's admission "that he drank almost a fifth of vodka knowing full well that he would have to deliver a baby later that day" meant that his actions met the definition of wanton endangerment in the second degree. The district court also found that, on the facts presented, "no reasonable juror could find" that the damages the Heinrichs suffered were other than a consequence of Duma's behavior, based in part on the fact that no evidence was presented to show that the injuries sustained by the Heinrichs "would have occurred regardless of Duma's intoxication."

Duma and the Heinrichs timely appealed both the grant of summary judgment for MPC and the denial of Duma's cross motion.

## II. ANALYSIS

Whether summary judgment was properly based on the policy exclusion depends on the meaning of the language of the contract—a legal issue. The first question is whether the words of the exclusion require some sort of criminal adjudication.

Kentucky courts demand that the applicability of an exclusion be unambiguous before it is honored. This is based on the twin cardinal principles that (1) insurance contracts must be construed

"so that all doubts pertaining to coverage are resolved in the insured's favor," and (2) exclusions must be read to make insurance effective whenever reasonably possible. *State Farm Mut. Auto. Ins. Co. v. Wilson,* 26 F. App'x 490, 494 (6th Cir. 2002) (citing *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992)). But "where the language of an insurance policy is clear and unambiguous, it cannot be construed to mean other wise than what it says." *Simpsonville Wrecker Serv., Inc., v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 829 (Ky. App. 1989) (internal citation omitted). "[C]ourts should not rewrite an insurance contract to enlarge the risk to the insurer." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994) (citing *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988).

In *Healthwise of Kentucky, Ltd., v. Anglin*, 956 S.W.2d 213, 215-16 (Ky. 1997), the Kentucky Supreme Court refused to hold that an exclusion of coverage for injuries "sustained as a result of being under the influence of alcohol (legal intoxication as defined by Kentucky law)" applied to a man with a blood alcohol content (BAC) of .21 who was driving "at about 70 miles per hour in a 35 mile per hour zone and driving on the wrong side of the road." The court determined that the language of the exclusion required a legal adjudication of the crime before the exclusion could be applied. *Id*. at 217. The court held:

> Kentucky law does not give a definition for legal intoxication which is exclusive to alcohol. That is, there is no statute that states, "Alcohol Intoxication means . . . ." Instead, contained in Kentucky Revised Statutes are a number of statutes which make the state of alcohol intoxication, under varying circumstances, a punishable offense. It is from these statutes that the Court of Appeals adopted a definition for legal alcohol intoxication. The statute chosen by the Court of Appeals is particularly appropriate because it is limited solely to alcohol intoxication. *Under the defining statute chosen by the Court of Appeals, the status of legal alcohol intoxication is*

> *determined through adjudication in a criminal proceeding.* Thus, we agree with the Court of Appeals that for the exclusion to apply to Anglin "he must not only have acted in a manner described under KRS 222.202(1), but he must have been adjudicated guilty of such conduct."

956 S.W.2d at 217-18 (emphasis added).

We addressed this issue in *State Farm Mutual Automobile Insurance Co. v. Wilson*, noting that the Kentucky Supreme Court did not explain how it determined from the language of Ky. Rev. Stat. § 222.202(1) that a criminal adjudication of guilt was required for the contract exclusion to apply. 26 F. App'x at 496-97. Lacking such explanation, we compared the statutes at issue in both cases and determined that the Kentucky statute in *Wilson*, Ky. Rev. Stat. § 514.100(1), was similar enough to the *Healthwise* statute, Ky. Rev. Stat. § 222.202(1), to predict that the Kentucky Supreme Court would follow its *Healthwise* decision and hold that a criminal adjudication of guilt was also necessary in *Wilson*. *Id.* Specifically, we noted that the parallel structure of both statutes began, "A person is guilty of [this offense] when . . . ." *Wilson*, 26 F. App'x at 496-97; Ky. Rev. Stat. §§ 222.202(1), 514.100(1).

Such statutory analysis dictates the same result here. The Kentucky statute for wanton endangerment is similarly constructed, beginning, "A person is guilty of wanton endangerment in the second degree when . . . ." Ky. Rev. Stat. § 508.070(1). Therefore, as we held in *Wilson*, if *Healthwise* were the Kentucky Supreme Court's last word on this issue, that court would hold on these facts that Duma is not excluded from insurance coverage based on the criminal-act exclusion because there has been no criminal adjudication of guilt.

The Kentucky Supreme Court, however, had rendered another decision that also impacted this Court's analysis in *Wilson*. It decided *Employers Ins. of Wausau v. Martinez*, 54 S.W.3d 142, 143 (Ky. 2001), a cemetery burial misconduct case holding that a criminal adjudication of guilt is not always required in order to trigger a policy exclusion for "willful violation of a penal statute." There, the Kentucky Supreme Court did not overrule *Healthwise*; it simply found a narrow exception to it, determining that when the insured admits all necessary elements of the relevant criminal statute, a criminal adjudication is unnecessary. *Id.* at 144. Based on a century-long practice of over burying the cemetery and reusing and reselling occupied graves, the court opined: "In this case, no question exists as to whether [the insured] violated a penal statute; such violations were admitted." *Id.* We applied this analysis in *Wilson* and found that the insured's admission in the answer to the complaint and the testimonial evidence amounted to an "effective admission of guilt" under the relevant Kentucky criminal statute. A criminal adjudication of guilt was, therefore, not required to trigger the vehicle insurance policy's exclusion for those "not in lawful possession" of the vehicle. 26 F. App'x at 495, 497-98.

There has been no criminal adjudication of Duma's guilt of the crime of wanton endangerment. Therefore, under *Healthwise* and *Martinez*, the policy exclusion for criminal acts does not apply here unless Duma's testimony amounts to an effective admission of the elements of the crime of wanton endangerment, Ky. Rev. Stat. § 508.070(1).[1]

---

[1]The dissent urges that *Martinez* effectively limits the holding of *Healthwise* to its facts. We disagree based on the analysis in those cases. Additionally, such an overly broad reading of the unique facts in *Martinez* would result in a problematic procedure: where neither a criminal

Kentucky Revised Statute § 508.070(1) provides that a person is guilty of wanton endangerment "when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." The state court determination of Duma's recklessness is not sufficient because Kentucky's substantive criminal law draws a distinction between reckless conduct and wanton conduct. "A person acts recklessly with respect to a result or to a circumstance . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ky. Rev. Stat. § 501.020(4). "A person acts wantonly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ky. Rev. Stat. § 501.020(3). Wanton conduct has a higher threshold of culpability attached to it under Kentucky law and, consequently, requires a showing of actual awareness of the risk on the part of the individual, not merely the presence of that risk. It is undisputed in this case that Duma's conduct amounted to a "substantial

---

adjudication nor an admission is present, a civil jury would be permitted to determine if a particular criminal statute has been violated. The dissent's proposal was considered and rejected by the Kentucky Supreme Court in *Healthwise*:

> Healthwise argues that a jury should be allowed to determine whether Anglin was legally intoxicated no matter what statute is used to define "legal intoxication." We reject this argument. The standard of proof is significantly different between civil and criminal proceedings. Moreover, the stakes are significantly different in the two proceedings. Further, even if the jury were to be instructed on the higher standard on the question of legal intoxication, Anglin still would not have attained the status of being legally intoxicated because no criminal penalty would attach to the adjudication.

956 S.W.2d at 218.

and unjustifiable risk." Therefore, this case turns on whether Duma admitted that he was actually aware of and consciously disregarded this risk.

The definition of "wantonly" includes a proviso: "A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto." Ky. Rev. Stat. § 501.020(3). When this provision is applicable, the elements of "voluntary intoxication" supplant the mental state or intent element in the definition of wantonly. Voluntary intoxication is defined as "intoxication caused by substances which the defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime." Ky. Rev. Stat. § 501.010(4).

Duma admitted as part of his state-court trial strategy that he knew he was consuming alcohol while he was on call at the hospital. And the amount of alcohol that he drank—the majority of a fifth of vodka—was enough that he "ought to know" it would have "the tendency to cause intoxication." *See* Ky. Rev. Stat. § 501.010(4). His defense was instead based on the theory that his intoxication was not the cause of the harm to the Heinrichs.

Duma's testimony that he did not believe that he would still be drunk at the time of the delivery is therefore immaterial. Whether Duma was actually aware of the risk his conduct created is irrelevant because Kentucky Revised Statute § 501.020(3) characterizes his conduct as wanton simply on the basis of his knowing self-intoxication and the objective fact that his conduct created a substantial risk of harm to another. Thus, Duma has admitted all the composite elements of the

crime of wanton endangerment and, as a result, the *Martinez* exception to the *Healthwise* rule governs. *See Martinez*, 54 S.W.3d at 145.

In order for the criminal-act exclusion in Duma's malpractice policy to apply, however, MPC must show not only that Duma committed the criminal act of wanton endangerment, but also that the Heinrichs' "damages [we]re in consequence of the performance of [that] criminal act." This issue was resolved in the present case by the state-court jury's verdict in the trial between the Heinrichs and Duma. The jury found that Duma "failed to comply with his duty [to exercise that degree of care and skill ordinarily expected of a reasonably competent obstetrician under the same or similar circumstances] and that *such failure was a substantial factor in causing injury*" to the Heinrichs.

We are bound by this factual finding. The substantial-factor standard is sufficient to support a finding that the injuries were "in consequence of" Duma's criminal act, since the policy language does not require that the criminal act be the sole factor causing the injuries. As such, the jury's finding is sufficient to trigger the criminal-act exclusion in Duma's malpractice insurance policy.

### III. DISCOVERY ISSUE

Finally, to the extent that it makes any difference at this point, we reject the Heinrichs' argument that the district court should have allowed more time for discovery. In November and December 2009, the Heinrichs filed a motion for extension of time to complete discovery and a motion to continue the discovery deadline, which the court granted. The Heinrichs served discovery on MPC on December 28, 2009. On January 6, 2010, MPC moved for summary judgment. Duma

filed a cross-motion for summary judgment on January 25, 2010. On January 27, 2010, the Heinrichs filed a motion for an extension of time to respond to MPC's motion. They argued that the information they requested from MPC would "be beneficial and necessary in responding to Plaintiffs['] motion for summary judgment," and so asked for a twenty-day continuance, until February 15, 2010, "to permit discovery to be had." MPC claims that the Heinrichs received their requested discovery the following day, on January 28, 2010; the Heinrichs do not contest this fact. The Heinrichs filed no response to MPC's motion for summary judgment.

The district court held a motion hearing on May 24, 2010. At the hearing, the court asked counsel for the Heinrichs whether the Heinrichs intended to have "an active role" in the summary judgment proceedings. Counsel responded that they would defer to counsel for Duma "and then make that assessment as the argument proceeds." Eventually, they concluded they had nothing they wanted to add, after the judge asked both at the end of Duma's argument and at the close of the hearing. In granting MPC's motion for summary judgment on June 18, 2010, the district court found that, because the Heinrichs' motion for an extension of time was filed six months earlier and because they had filed nothing in the interim, "this Court assumes that Counsel for the [Heinrichs] have decided not to file a separate response to [MPC's] motion for summary judgment" and so denied the motion as moot.

The district court acted within its discretion in doing so. Discovery concluded on January 28, 2010. The Heinrichs had ample time after that point to respond to MPC's motion for summary judgment if they so chose; they chose not to. The district court extended the opportunity to the

Heinrichs again at the motion hearing in May to respond to MPC's motion; again, they chose not to.

Their January 27 motion asked only for additional time to receive discovery already requested; there is no mention of planning to request additional discovery. If the Heinrichs were to obtain any documentation to support their arguments, they would have received it on January 28, and so could have argued it at the motion hearing. The district court could reasonably conclude that the Heinrichs were not planning to file a response, and therefore did not abuse its discretion in denying their motion for an extension of time.

## IV.  CONCLUSION

We affirm the grant of summary judgment to MPC.

ROGERS, Circuit Judge, dissenting. In *Healthwise of Kentucky, Ltd., v. Anglin*, 956 S.W.2d 213 (Ky. 1997), the Kentucky Supreme Court required a criminal adjudication in order for an illegal-intoxication exclusion to apply in a case involving a driving-while-intoxicated crime. In *Employers Ins. of Wausau v. Martinez*, 54 S.W.3d 142 (Ky. 2001), the Kentucky Supreme Court later applied a policy's criminal-act exclusion notwithstanding the absence of a criminal adjudication, where the insured admitted the criminal act. In a case involving neither an illegal intoxication crime nor an admission, there are two possible ways to interpret the current state of Kentucky law: either (a) *Healthwise* states the general rule that an adjudication is required, and *Martinez* provides an exception in the case of an admission; or (b) *Martinez* states the general rule that an adjudication is not required, but *Healthwise* provides an exception in the case of policy exclusions that require a criminal status of legal intoxication. The majority reads Kentucky law as (a), but the majority's analysis in this regard is not necessary to its conclusion, as the majority goes on to hold that there was an effective admission in this case. It is necessary for me to decide between (a) and (b), however, because in my view there has not been an effective admission of the crime of wanton endangerment here, as explained in part II below. A fair reading of the later of the two relevant Kentucky Supreme Court cases moreover shows that (b) is correct: *Martinez* provides the general rule and *Healthwise* a narrow exception. A remand for a fact-finding as to whether Duma committed wanton endangerment is therefore required.

I.

It is unlikely that the Supreme Court of Kentucky would interpret the words in Duma's insurance policy to require some sort of criminal adjudication before the exclusion could apply. The plain meaning of the words does not require a criminal adjudication, and such a requirement could easily have been articulated in the contract. Moreover, reading the words to impose a prior-adjudication requirement would lead to the unlikely result that the insurance company would be responsible for behavior clearly intended to be excluded, such as euthanasia or inserting smuggled drugs in a "mule," merely because the insured happened for one reason or another not to be prosecuted or convicted. The words of the contract do not bear such a result.

The only possible basis for anticipating such a contract interpretation is a Kentucky Supreme Court case that has subsequently been limited so as to preclude its applicability in the present case. It is not likely that the Supreme Court of Kentucky would extend its reasoning from the context of a "legal intoxication" exclusion in *Healthwise*, 956 S.W.2d at 215-16, to one involving a criminal-act exclusion. Several factors support this conclusion. First, the *Healthwise* court disposed of a criminal act exclusion that was also relied upon by the insurance company on an entirely different ground, one not relied upon in the present case. *See id.* at 216-17. Second, extending the reasoning used by the *Healthwise* court in the context of "legal intoxication" exclusions to criminal act exclusions would lead to a far more sweeping modification of the parties' obvious intent than the "legal intoxication" analysis of the *Healthwise* court.

Third, and most compellingly, the Supreme Court of Kentucky has more recently held, in the factually closer context of a policy exclusion for "willful violation of a penal statute," that the provisions of the insurance policy did not require that the insured have been convicted of the offense. *Martinez*, 54 S.W.3d at 143. The case involved a claim for civil damages arising from cemetery mismanagement and misconduct; the insured admitted that various crimes were committed, but argued that under *Healthwise* the exclusion did not apply because there was no criminal conviction. *Id.* The Supreme Court of Kentucky reasoned:

> We agree with Appellant that the Court of Appeals incorrectly interpreted and misapplied *Healthwise, supra,* and that it is inappropriate to find coverage in a policy that is meant to cover professional errors or mistakes, when the claims made arise from deliberate and systematic wrongful acts. The criminal conviction which the Court of Appeals would require is not expressed by the terms of the policy. We required an adjudication of the alcohol intoxication "status" in *Healthwise, supra*, because, while the use of alcohol alone did not trigger the exclusion, intoxication did. Because intoxication was not defined expressly in the penal code, it required a court determination. In this case, no question exists as to whether LCC violated a penal statute; such violations were admitted.

*Id.* at 145.

It is true that there is no unequivocal admission of a criminal violation in this case, and that *Martinez* could possibly be distinguished in this regard. But the rejection in *Martinez* of the *Healthwise* rationale is forceful. If faced with the present case it is likely the Kentucky Supreme Court would conclude, as in *Martinez*, that in the case of "deliberate and systematic wrongful acts," requiring a criminal conviction "is not expressed by the terms of the policy." *Id.*

- 14 -

II.

This leaves the question of how the insurance company can show a criminal violation in the absence of either a criminal adjudication or an admission of criminal conduct. There is no reason not to apply in this case the normal fact-finding processes of the federal court. Summary judgment is warranted only if there is no genuine issue of material fact. On the record before us it cannot be said that there is no genuine of material fact as to whether Duma's actions were wanton. The district court relied on the state court findings of negligence and recklessness that were necessary for a determination of liability and an award of punitive damages, as well as Duma's admissions that he drank almost a fifth of vodka knowing that he would have to deliver a baby later that day.

The state court determination of recklessness is not sufficient because Kentucky's substantive criminal law draws a distinction between reckless conduct and wanton conduct. "A person acts recklessly with respect to a result or to a circumstance . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ky. Rev. Stat. § 501.020(4). "A person acts wantonly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Ky. Rev. Stat. § 501.020(3). Wanton conduct has a higher threshold of culpability attached to it under Kentucky law, and consequently requires a showing of actual awareness of risk on the part of the individual, not merely the presence of that risk.

Moreover, the language in the definition of wanton concerning voluntary intoxication does not lead to a different result. The definition of wanton provides: "A person who creates such a risk

but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto." Ky. Rev. Stat. § 501.020(3). The statutory provision does not make voluntary intoxication wanton; it keeps an action otherwise wanton from losing its wanton nature just because the actor is intoxicated. A wanton endangerment—say, playing Russian roulette—does not lose its wanton nature if the player is voluntarily drunk. But someone whose actions are reckless but not wanton if he is sober does not by the terms of this statutory provision become wanton because he is voluntarily intoxicated.

It is accordingly a mistake to read the final sentence of Ky. Rev. Stat. § 501.020(3)'s "wantonly" definition as *supplanting* the intent element of the wanton endangerment crime by replacing the defendant's awareness of the risk with the defendant's knowledge of excessive alcohol consumption. Such a reading would eliminate the intent element of wanton endangerment and create a new and different crime: endangerment while voluntarily intoxicated. The language of the criminal statute does not permit such a reading

It is true that Duma admitted in his deposition that he drank nearly a fifth of vodka and proceeded to deliver a baby. It is also not contested that these actions were reckless, and we may accept the state court's determination that the recklessness caused the injury to the child. But all of this does not necessarily prove the more culpable state of wantonness. Whether such an action is wanton in addition to being reckless is something as to which reasonable minds could differ. Duma's actions in this case are not in dispute, but the criminality of the crime of wanton endangerment is predicated not on the act, but the mindset behind it. Duma induced Michelle

Heinrich and then drank a large quantity of alcohol, knowing full well that later that day he would have to deliver her baby. Both the act of drinking under these circumstances and the act of going ahead with the delivery could be interpreted as being "aware of and consciously disregard[ing] a substantial and unjustifiable risk." *See* Ky. Rev. Stat. § 501.020(3). The act might also be considered a failure "to perceive a substantial and unjustifiable risk . . . [that] constitutes a gross deviation from the standard of care that a reasonable person would observe," which is the definition of recklessness. Ky. Rev. Stat. § 501.020(4). This is not a situation where Duma stumbled into a delivery room with slurred speech and obvious signs of drunkenness. His behavior was ordinary enough that no one stopped him from delivering Cameron Heinrich; only later was a blood alcohol test administered because of the noticed smell. As for Duma's drinking in the first place, his testimony suggests that he did not expect the alcohol to affect him deleteriously by the time of the delivery. The line between reckless medical practice and wanton endangerment in these circumstances is close enough that reasonable fact finders could differ. This narrow basis precludes summary judgment for the insurer. On the record before us, there is not enough to take from a fact-finding judge or jury the factual determination of whether Duma's actions were wanton.

III.

I would vacate the grant of summary judgment to MPC and remand for further proceedings.