ROGERS, Circuit Judge,
dissenting.
In Healthwise of Kentucky, Ltd., v. Anglin, 956 S.W.2d 213 (Ky.1997), the Kentucky Supreme Court required a criminal adjudication in order for an illegal-intoxication exclusion to apply in a case involving a driving-while-intoxicated crime. In Employers Ins. of Wausau, v. Martinez, 54 S.W.3d 142 (Ky.2001), the Kentucky Supreme Court later applied a policy’s criminal-act exclusion notwithstanding the absence of a criminal adjudication, where the insured admitted the criminal act. In a case involving neither an illegal intoxication crime nor an admission, there are two possible ways to interpret the current state of Kentucky law: either (a) Health-wise states the general rule that an adjudication is required, and Martinez provides an exception in the case of an admission; or (b) Martinez states the general rule that an adjudication is not required, but Healthwise provides an exception in the case of policy exclusions that require a criminal status of legal intoxication. The majority reads Kentucky law as (a), but the majority’s analysis in this regard is not necessary to its conclusion, as the majority goes on to hold that there was an effective admission in this case. It is necessary for me to decide between (a) and (b), however, because in my view there has not been an effective admission of the crime of wanton endangerment here, as explained in part II below. A fair reading of the later of the two relevant Kentucky Supreme Court cases moreover shows that (b) is correct: Martinez provides the general rule and Healthwise a narrow exception. A remand for a fact-finding as to whether Duma committed wanton endangerment is therefore required.
I.
It is unlikely that the Supreme Court of Kentucky would interpret the words in Duma’s insurance policy to require some sort of criminal adjudication before the exclusion could apply. The plain meaning of the words does not require a criminal adjudication, and such a requirement could easily have been articulated in the contract. Moreover, reading the words to impose a prior-adjudication requirement would lead to the unlikely result that the *984 insurance company would be responsible for behavior clearly intended to be excluded, such as euthanasia or inserting smuggled drugs in a “mule,” merely because the insured happened for one reason or another not to be prosecuted or convicted. The words of the contract do not bear such a result.
The only possible basis for anticipating such a contract interpretation is a Kentucky Supreme Court case that has subsequently been limited so as to preclude its applicability in the present case. It is not likely that the Supreme Court of Kentucky would extend its reasoning from the context of a “legal intoxication” exclusion in Healthwise, 956 S.W.2d at 215-16, to one involving a criminal-act exclusion. Several factors support this conclusion. First, the Healthwise court disposed of a criminal act exclusion that was also relied upon by the insurance company on an entirely different ground, one not relied upon in the present case. See id. at 216-17. Second, extending the reasoning used by the Healthwise court in the context of “legal intoxication” exclusions to criminal act exclusions would lead to a far more sweeping modification of the parties’ obvious intent than the “legal intoxication” analysis of the Healthwise court.
Third, and most compellingly, the Supreme Court of Kentucky has more recently held, in the factually closer context of a policy exclusion for “willful violation of a penal statute,” that the provisions of the insurance policy did not require that the insured have been convicted of the offense. Martinez, 54 S.W.3d at 148. The case involved a claim for civil damages arising from cemetery mismanagement and misconduct; the insured admitted that various crimes were committed, but argued that under Healthwise the exclusion did not apply because there was no criminal conviction. Id. The Supreme Court of Kentucky reasoned:
We agree with Appellant that the Court of Appeals incorrectly interpreted and misapplied Healthwise, supra, and that it is inappropriate to find coverage in a policy that is meant to cover professional errors or mistakes, when the claims made arise from deliberate and systematic wrongful acts. The criminal conviction which the Court of Appeals would require is not expressed by the terms of the policy. We required an adjudication of the alcohol intoxication “status” in Healthwise, supra, because, while the use of alcohol alone did not trigger the exclusion, intoxication did. Because intoxication was not defined expressly in the penal code, it required a court determination. In this case, no question exists as to whether LCC violated a penal statute; such violations were admitted.
Id. at 145.
It is true that there is no unequivocal admission of a criminal violation in this ease, and that Martinez could possibly be distinguished in this regard. But the rejection in Martinez of the Healthwise rationale is forceful. If faced with the present case it is likely the Kentucky Supreme Court would conclude, as in Martinez, that in the case of “deliberate and systematic wrongful acts,” requiring a criminal conviction “is not expressed by the terms of the policy.” Id.
II.
This leaves the question of how the insurance company can show a criminal violation in the absence of either a criminal adjudication or an admission of criminal conduct. There is no reason not to apply in this case the normal fact-finding processes of the federal court. Summary judgment is warranted only if there is no genuine issue of material fact. On the *985 record before us it cannot be said that there is no genuine of material fact as to whether Duma’s actions were wanton. The district court relied on the state court findings of negligence and recklessness that were necessary for a determination of liability and an award of punitive damages, as well as Duma’s admissions that he drank almost a fifth of vodka knowing that he would have to deliver a baby later that day.
The state court determination of recklessness is not sufficient because Kentucky’s substantive criminal law draws a distinction between reckless conduct and wanton conduct. “A person acts recklessly with respect to a result or to a circumstance ... when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ky.Rev.Stat. § 501.020(4). “A person acts wantonly with respect to a result or to a circumstance ... when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ky.Rev.Stat. § 501.020(3). Wanton conduct has a higher threshold of culpability attached to it under Kentucky law, and consequently requires a showing of actual awareness of risk on the part of the individual, not merely the presence of that risk.
Moreover, the language in the definition of wanton concerning voluntary intoxication does not lead to a different result. The definition of wanton provides: “A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.” Ky.Rev.Stat. § 501.020(8). The statutory provision does not make voluntary intoxication wanton; it keeps an action otherwise wanton from losing its wanton nature just because the actor is intoxicated. A wanton endangerment — say, playing Russian roulette— does not lose its wanton nature if the player is voluntarily drunk. But someone whose actions are reckless but not wanton if he is sober does not by the terms of this statutory provision become wanton because he is voluntarily intoxicated.
It is accordingly a mistake to read the final sentence of Ky.Rev.Stat. § 501.020(S)’s “wantonly” definition as supplanting the intent element of the wanton endangerment crime by replacing the defendant’s awareness of the risk with the defendant’s knowledge of excessive alcohol consumption. Such a reading would eliminate the intent element of wanton endangerment and create a new and different crime: endangerment while voluntarily intoxicated. The language of the criminal statute does not permit such a reading
It is true that Duma admitted in his deposition that he drank nearly a fifth of vodka and proceeded to deliver a baby. It is also not contested that these actions were reckless, and we may accept the state court’s determination that the recklessness caused the injury to the child. But all of this does not necessarily prove the more culpable state of wantonness. Whether such an action is wanton in addition to being reckless is something as to which reasonable minds could differ. Duma’s actions in this case are not in dispute, but the criminality of the crime of wanton endangerment is predicated not on the act, but the mindset behind it. Duma induced Michelle Heinrich and then drank a large quantity of alcohol, knowing full well that later that day he would have to deliver her baby. Both the act of drinking under these circumstances and the act of going ahead with the delivery could be interpreted as being “aware of and consciously disregarding] a substantial and unjustifiable risk.” See Ky.Rev.Stat. § 501.020(8). The act might also be considered a failure “to *986 perceive a substantial and unjustifiable risk ... [that] constitutes a gross deviation from the standard of care that a reasonable person would observe,” which is the definition of recklessness. Ky.Rev.Stat. § 501.020(4). This is not a situation where Duma stumbled into a delivery room with slurred speech and obvious signs of drunkenness. His behavior was ordinary enough that no one stopped him from delivering Cameron Heinrich; only later was a blood alcohol test administered because of the noticed smell. As for Duma’s drinking in the first place, his testimony suggests that he did not expect the alcohol to affect him deleteriously by the time of the delivery. The line between reckless medical practice and wanton endangerment in these circumstances is close enough that reasonable fact finders could differ. This narrow basis precludes summary judgment for the insurer. On the record before us, there is not enough to take from a fact-finding judge or jury the factual determination of whether Duma’s actions were wanton.
III.
I would vacate the grant of summary judgment to MPC and remand for further proceedings.