**STATE FARM MUTUAL AUTO-
MOBILE INSURANCE CO.,
Plaintiff–Appellant,**

Hamilton Mutual Insurance
Co., Plaintiff,

v.

Christopher R. WILSON et al.,
Defendants–Appellees.

No. 00–5595.

United States Court of Appeals,
Sixth Circuit.

Jan. 11, 2002.

Rosen, District Judge, filed concurring opinion.

Before MOORE and COLE, Circuit Judges; ROSEN,* District Judge.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant State Farm Mutual Automobile Insurance Company ("State Farm") appeals the district court's decision denying its motion for summary judgment and holding that State Farm was obliged to provide coverage and a defense to Christopher R. Wilson and his family for a civil damages claim arising out of an automobile accident. Based on recent developments in Kentucky case law, we REVERSE the judgment of the district court and REMAND with instructions for the district court to enter judgment in favor of State Farm.

## I. BACKGROUND

The events giving rise to this action occurred in the late evening and early morning of August 21 and 22, 1997 in Nelson County, Kentucky. At approximately 11:00 p.m. on August 21, after his parents, Garry and Nancy Wilson, had gone to bed, sixteen-year-old Christopher Wilson disengaged his home's security system and climbed out of his first-floor bedroom window. Once out of the house, Christopher walked the short distance to the property owned by his grandparents, Robert and Virginia Davis. As Christopher was well aware, the Davises were away on a camping trip that evening. Christopher then proceeded to his grandparents' garage, which housed his grandparents' 1995 Dodge Dakota pick-up truck. Using a key he had copied without his grandparents' knowledge, he started the truck and drove off.

It is undisputed from the deposition testimony that Christopher knew that he did not have permission from his grandparents to drive the vehicle, nor had his parents authorized him to leave the house that evening. Christopher also did not have a valid driver's license. Instead, Christopher had only a learner's permit, which prohibited him from driving without a licensed driver in the car.

Christopher admitted in his deposition that he took the truck so that he could go joy riding with his friends, Donald Pegago, III, and Timothy Downs, both of whom were fifteen-years-old and without driver's licenses at the time. As per their pre-arranged plan, Christopher picked up Donald around midnight, and then Timothy shortly thereafter. According to Christopher, both Timothy and Donald knew that Christopher was driving without a license and that he did not have permission to drive his grandfather's truck.

After picking up Timothy, Christopher drove to Timothy's girlfriend's house, where they stayed for approximately two hours. When the boys finally left Timothy's girlfriend's house, they were in a hurry to return Donald to his house before his family discovered that he was missing. While the boys were en route to Donald's house, a police officer observed the truck traveling at approximately seventy miles per hour in a thirty-five mile-per-hour zone. The officer gave chase, and Christopher, egged on by his friends, attempted to outrun the police car. By Christopher's own estimate, his speed reached approximately 135 miles per hour during the chase. At a sharp curve in the road, Christopher lost control of the truck and drove off the road. According to Christo-

---

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

pher, the truck flipped six times, throwing Donald from the cabin. Donald suffered severe injuries as a result, and his family have sued Christopher and his parents in state court.

Following the accident, Christopher was charged with wanton endangerment, eluding the police, driving without a license, speeding, and criminal mischief. He was not charged with any crime, however, for taking his grandparents' vehicle without their permission.

Both the Wilsons and the Davises insured their vehicles with State Farm. On August 18, 1998, State Farm filed a declaratory action in the United States District Court for the Western District of Kentucky, seeking a ruling that State Farm was not liable under either of the two policies for the injuries suffered by Donald Pegago.[1]

The relevant language in the Wilsons' automobile insurance policy for purposes of this dispute involves the policy's coverage of non-owned cars. According to the language of the policy, "non-owned car" is defined as

a *car* not owned by or registered or leased in the name of:

1. [the policy holder or the policy holder's spouse];

2. any *relative*[2] . . .

3. any other *person* residing in the same household as [the policy holder, the policy holder's spouse] or any *relative; or*

4. an employer of [the policy holder, the policy holder's spouse] or any *relative.*

Joint Appendix ("J.A.") at 385. The provision central to this case appears immediately after this definition, stating that a car "which is not in the lawful possession of the *person* operating it" is not a "non-owned car" for purposes of the policy. J.A. at 385–86. The parties do not dispute that Christopher would be covered by his family's policy if the grandparents' pick-up truck is classified as a non-owned car. Whether the grandparents' truck is classified as a non-owned vehicle hinges upon whether Christopher was in "lawful possession" of the truck while driving it.

After the parties conducted limited discovery, State Farm filed a motion for summary judgment with respect to its declaratory action. On December 13, 1999, the district court issued an opinion granting State Farm's motion for summary judgment with respect to the Davises' policy, but denying State Farm's motion with respect to the Wilsons' policy, holding that "State Farm must provide coverage and a defense for Christopher Wilson and his parents" concerning the damages resulting from Pegago's injuries. J.A. at 95.

In its opinion, the district court first recognized that, given the undisputed fact that Christopher took his grandparents' truck without their permission, and the fact that Kentucky law prohibits the unauthorized possession of a motor vehicle, Ky. Rev.Stat. § 514 .100, "one might logically

---

1. The damage caused to the Davises' truck was covered and paid for by State Farm under the Davises' automobile insurance policy. The district court ultimately granted summary judgment in favor of State Farm with respect to the Davises' policy, holding that it did not cover any of Pegago's injuries. This aspect of the district court's decision is not contested on appeal.

2. The policy defines a "relative" as "a *person* related to [the policy holder or the policy holder's spouse] by blood, marriage or adoption who lives with [the policy holder]." J.A. at 386. Because the Davises did not live with the Wilsons, there is no dispute that the Davises do not fall within the Wilson policy's coverage of a car owned, registered, or leased in the name of a relative.

assume that State Farm would have no obligation to defend or indemnify under the policy." J.A. at 92. After an analysis of the Kentucky Supreme Court's decision in *Healthwise of Kentucky, Ltd. v. Anglin,* 956 S.W.2d 213 (Ky.1997), however, the district court concluded that the notion of "lawful possession" must be considered an ambiguous policy provision and that an adjudication of criminal guilt with respect to Christopher's unauthorized use of the truck was needed before the policy provision at issue would preclude coverage. *See* J.A. at 92–93. Noting that the *Healthwise* decision was binding in this diversity case, the district court held that Christopher Wilson's use of the truck fell within the policy's coverage for non-owned vehicles, and that State Farm would have to provide the Wilson family coverage and a defense with respect to the Pegago family's state-law claims. *See* J.A. at 95.

Following the district court's decision, State Farm filed a motion pursuant to Fed.R.Civ.P. 54 requesting that the district court enter a final judgment with respect to the claims decided in the court's December 13, 1999 order granting in part and denying in part State Farm's motion for summary judgment. The district court, finding no just cause for delay, granted State Farm's motion on April 18, 2000. State Farm filed a timely appeal of the district court's judgment.

## II. ANALYSIS

■■■ We review de novo a district court's decision to grant summary judgment. *Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir.2001). The moving party has the burden of establishing that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). This court also applies de novo review to a district court's determina-

tions of state law. *Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426, 1429 (6th Cir.1997). In diversity cases, we are bound to apply the same law as would be applied by the state courts. *See id.* If the Kentucky Supreme Court has addressed in a decision the issue before us on appeal, "we are bound by that decision unless we are convinced that the [state's] high court would overrule it if confronted with facts similar to those before us." *Id.* (quotation omitted).

■■■ Before we address the relevant state case law, it is important that we emphasize, as the Kentucky state courts repeatedly have, the two "cardinal principles" of Kentucky insurance law. *Ky. Farm Bureau Mut. Ins. Co. v. McKinney,* 831 S.W.2d 164, 166 (Ky.1992). First, insurance contracts are to be liberally construed so that all doubts pertaining to coverage are resolved in the insured's favor. *See id.* Second, an insurance policy's "exceptions and exclusions should be strictly construed to make insurance effective." *Id.* (quotation omitted). The Kentucky Supreme Court has noted, however, that these general rules do

> not mean that every doubt must be resolved against [the insurance company] and [do] not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.,* 870 S.W.2d 223, 226–27 (Ky.1994).

In two recent cases, *Healthwise* and *Employers Insurance of Wausau v. Martinez,* 54 S.W.3d 142 (Ky.2001), the Ken-

tucky Supreme Court has addressed insurance provisions similar to, though not the same as, the provision at issue in this case. In important respects, these decisions appear to be inconsistent, with *Martinez* limiting, significantly, the holding of *Healthwise*. Because of the lack of clarity of the Kentucky law, we certified the following question to the Kentucky Supreme Court:

> In light of the Kentucky Supreme Court's recent interpretation of *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213 (Ky.1997), in *Employers Ins. of Wausau v. Martinez*, No.1999–SC–1008–D, 2001 WL 567731 (Ky. May 24, 2001), is a criminal adjudication of guilt required before an automobile insurance provision excluding coverage can be invoked where: the provision denies coverage for damages incurred when driving non-owned vehicles if the vehicle "is not in the *lawful possession* of the person operating it;" "lawful possession" was not defined in the insurance policy nor in the Kentucky Penal Code; and the insured, while admitting to driving the vehicle without permission of the owners (his grandparents), was not criminally charged for this conduct.

In an order entered on October 25, 2001, the Kentucky Supreme Court denied our request for certification. Thus, we must analyze the case law to determine how the Kentucky Supreme Court would decide the case at bar, without guidance from that court.

In *Healthwise*, the insured was seriously injured while racing another vehicle; his blood alcohol level was .21 percent. The insured, however, was not charged with any offense. *See Healthwise*, 956 S.W.2d at 215. A short time after the accident, the insurance provider notified the insured that it would not cover any of his medical expenses because two of his policy's coverage exclusions applied. The first exclusion stated that "[l]osses suffered ... while committing or attempting to commit a crime" were not covered. *Id.* at 215–16. The insurer argued that this exclusion applied because the insured suffered his injuries while committing the crime of drag racing. The second exclusion stated that "[t]reatment for injuries sustained as a result of being under the influence of alcohol (legal intoxication as defined by Kentucky law) or the illegal use of drugs" would not be covered under the policy. *Id.* at 216. The insurer claimed that, given the insured's blood alcohol level, this exclusion also applied.

In first addressing the crime exclusion, the Kentucky Supreme Court stated that, although the average person would view the insured's drag racing while under the influence as criminal, for purposes of the exclusion the term "crime" should not be defined as the ordinary person would define it. Rather, because "[p]eople often use the words 'crime' and 'criminal' to describe actions which, though perhaps reprehensible, are neither illegal nor unlawful[, u]sing a subjective definition of 'crime' would lead to an overly broad reading of the exclusion and inconsistent applications of it." *Id.* Instead of looking to the insurer's proposed definition of crime found in Black's Law Dictionary, the court looked to the Kentucky Penal Code's definition of crime, as suggested by the insured. Based on the Kentucky Penal Code's definition of crime as "a misdemeanor or a felony," Ky.Rev.Stat. § 500.080(2), the Kentucky Supreme Court ultimately decided that drag racing was neither a misdemeanor nor a felony, but was instead a separate traffic offense. Thus, the court held, the "crime" exclusion did not apply. *See Healthwise*, 956 S.W.2d at 216.

In examining the intoxication exclusion, which defined "being under the influence

of alcohol" as meaning "legal intoxication as defined by Kentucky law," the court again decided that the exclusion was ambiguous because "several definitions of legal intoxication ... could apply." *Id.* at 217. After examining several statutory provisions, the court decided that Ky.Rev. Stat. § 222.202(1) was the most appropriate provision from which to extract the definition of "legal intoxication." *See id.* at 217–18. Section 222.202(1) states: "A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." Based on this statutory language, the court concluded that "the status of legal alcohol intoxication is determined through adjudication in a criminal proceeding" and that for the intoxication exclusion to apply, the insured "must not only have acted in a manner described under KRS 222.202(1), but he must have been adjudicated guilty of such conduct." *Healthwise,* 956 S.W.2d at 218 (quotation omitted). Because both exclusions were inapplicable to the insured, the court held that the insurer was required to cover the insured's medical expenses associated with the accident.

The district court in the present case was apparently correct in holding, under *Healthwise,* that the policy provision at issue would preclude coverage only if there were a criminal adjudication of Christopher Wilson's guilt for unlawful possession of his grandfather's truck, even though the ordinary person would consider his conduct unlawful without the need for any such adjudication. As with the "crime" exclusion in *Healthwise,* the "not in the lawful possession" policy language at issue in this case was not defined in the policy itself and thus the Kentucky Supreme Court would likely find it both ambiguous and susceptible to "an overly broad reading."[3] *Healthwise,* 956 S.W.2d at 216. It is also likely that, in determining what does and does. not constitute "lawful possession" for purposes of this case, the state supreme court would turn to Kentucky statutory law. As the district court noted in its opinion, there is one clearly applicable code provision to which the state supreme court would likely look in determining whether Christopher Wilson's possession was lawful. This provision, Ky.Rev.Stat. § 514.100(1), concerns the crime of an unauthorized use of an automobile, and states that "[a] person is guilty of the unauthorized use of an automobile or other propelled vehicle when he knowingly operates, exercises control over, or otherwise uses such vehicle without consent of the owner or person having legal possession thereof."[4]

Although the Kentucky Supreme Court did not explain how it determined, from the language of the intoxication statute at issue in *Healthwise,* that a criminal adjudication of guilt was needed before one could be considered legally intoxicated under

---

**3.** State Farm argues on appeal that the term "unlawful," unlike "illegal," is broad enough to encompass acts not punishable by criminal laws, and thus a criminal adjudication of guilt should not be needed before the policy provision excluding coverage applies. Appellant's Br. at 21. It is unlikely, however, that the Kentucky Supreme Court, in light of its opinion that "crime" is a nebulous term, would allow the term "lawful" to go unclarified by the relevant statutory provisions in the Kentucky Penal Code relating to lawful possession.

**4.** The commentary to Ky.Rev.Stat. § 514.100 states that the provision "is directed primarily against 'joy riding' generally committed by youngsters. It is necessary because it covers conduct not amounting to theft under other sections of this chapter. There is no intention to deprive the owner of his property or to appropriate property."

Kentucky law, the language of the "unauthorized use of an automobile" statute is similarly constructed. As the district court noted, both provisions begin, "A person is guilty of [this offense] when...." Ky.Rev.Stat. §§ 222.202(1), 514.100(1). Given the statutes' similar language, as well as the Kentucky courts' doctrine that ambiguous policy provisions should be construed in favor of coverage, it is likely that, under *Healthwise*, the Kentucky Supreme Court would hold that a criminal adjudication of guilt for an "unauthorized use of an automobile" is necessary before it could be decided that Christopher Wilson was "not in the lawful possession of" his grandfather's vehicle, and thus that Donald Pegago's injuries were covered under the Wilson policy. Because, like the insured in *Healthwise*, Christopher Wilson was never charged with any crime for taking his grandparents' truck, it appears that, if *Healthwise* were the Kentucky Supreme Court's last word on this issue, that court would hold on these facts that Christopher is covered under his family's automobile insurance policy.

But in determining how the Kentucky Supreme Court would decide the present case, we must also take into account its more recent decision in *Martinez*. *Martinez* was handed down on May 24, 2001,[5] while this appeal was pending, and thus the district court did not have the opportunity to consider it in ruling on the motions in the present case. We are obligated, however, to consider *Martinez* in determining how the Kentucky Supreme Court would decide the present case. Following *Martinez*, we conclude that the Kentucky Supreme Court would hold that the policy provision denying coverage must be enforced in the present case.

In *Martinez*, the Kentucky Supreme Court held that a criminal conviction was not necessary to trigger a provision excluding coverage for bodily injury resulting from the "willful violation of a penal statute or ordinance." *Martinez*, 54 S.W.3d at 143. The defendants-insureds in *Martinez* owned and operated a cemetery in Louisville, Kentucky. The defendants were faced with a civil damages claim following the discovery that the cemetery had committed a number of improper practices, including interring multiple bodies in a single grave. The criminal charges brought against the defendants were dropped when the defendants agreed to participate in a diversion program. *See id.*

The specific language of the exclusion at issue in *Martinez* stated that there would be no coverage for "bodily injury caused by willful violation of a penal statute or ordinance committed by or with the knowledge of an insured or of a manager employed by the named insured." *Id.* The court held that, by acknowledging that they had engaged in over-burying, reusing grave sites, and other improper practices, the defendants had admitted, effectively, violating a penal statute: "In this case, no question exists as to whether [the insured] violated a penal statute; such violations were admitted." *Id.* at 144. Thus, no formal adjudication of guilt was necessary to trigger the policy exclusion.

In reaching this conclusion, the Kentucky Supreme Court reversed the state court of appeals, which had based its decision on *Healthwise*. The Kentucky Supreme Court stated that the court of appeals had misapplied *Healthwise*. *See id.* at 144, 145. In so holding, the court focused on the *Healthwise* court's treatment of the intoxication exclusion. The state

---

**5.** As modified on denial of rehearing, *Martinez* became a final decision of the Kentucky

Supreme Court on September 27, 2001, after oral argument in the present case.

supreme court held, in a somewhat confusing analysis, that a criminal adjudication of the "status" of alcohol intoxication was required "because, while the use of alcohol alone did not trigger the exclusion, intoxication did. Because intoxication was not defined expressly in the penal code, it required a court determination." *Id.* at 144. In contrast, the court reasoned that the defendants in *Martinez* effectively admitted to violating a penal statute, even though they had not pleaded guilty, and thus there was no need for a criminal adjudication of their guilt before the coverage exclusion was triggered.

We conclude that the Kentucky Supreme Court would decide the present case differently under *Martinez* than it would have under *Healthwise*. The *Martinez* court emphasized that the defendants in that case effectively admitted to violating a penal statute. Similarly, it appears that the Wilsons have admitted, in effect, that Christopher violated Kentucky law in the present case. Section 514.100(1) is violated if a person knowingly operates a vehicle "without consent of the owner or person having legal possession thereof." Christopher openly and repeatedly admitted in his deposition that he did not have permission to drive his grandparents' truck, and that he was wrong to do so. *See* J.A. at 236, 248–49, 262, 266–67. Moreover, in their answer to State Farm's complaint, the Wilsons admitted that Christopher was not in lawful possession of the vehicle.[6] Following the *Martinez* court's reasoning, such admissions render a criminal adjudication of guilt under

§ 514.100(1) unnecessary to trigger the policy provision precluding coverage.

■ Thus, rather than hold that a criminal adjudication of guilt is necessary with respect to the lawfulness of Christopher's possession of the truck, we follow *Martinez* and hold that the Wilsons' admissions amount to an effective admission of guilt under § 514.100(1), the statutory provision most helpful in defining what constitutes lawful possession for purposes of this case. Because Christopher has admitted, in effect, to not having lawful possession of the truck, and the Wilsons admitted as much in their answer, the policy provision denying coverage must be enforced in the present case.

Based on this reasoning, we REVERSE the district court's decision holding that State Farm must provide coverage and a defense for the Wilson family with respect to Donald Pegago's state-law damages claims and REMAND for the district court to enter judgment in favor of State Farm.

## III. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND to the district court with directions to enter judgment in favor of State Farm.

ROSEN, District Judge, concurring.

I fully concur with the Court's ruling in this case. I wish only to add that at least two alternative constructions of Kentucky case law, in addition to the one adopted by the majority, would lead to precisely the same result. Under our diversity jurisdiction, where our role is narrowly limited to

---

6. The Wilsons' answer admitted to the allegations contained in the sixth paragraph of State Farm's complaint. *See* J.A. at 18. Paragraph six of State Farm's complaint alleged that Christopher Wilson had operated his grandfather's truck "without lawful possession." J.A. at 10. The Wilsons subsequently moved the district court to allow them to file an amended answer. *See* J.A. at 21. In their proposed amended answer, the Wilsons denied this allegation. *See* J.A. at 22. The district court, however, denied the Wilsons' motion. *See* J.A. at 40 (Order, June 7, 1999).

predicting what a state court would do if presented with the facts before us, I am reluctant to foreclose the possibility that the Kentucky courts might choose to follow a course different from the one selected by the majority.

As noted by the majority, the Kentucky Supreme Court's decision in *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213 (Ky.1997), seems to require a criminal adjudication of guilt in order to satisfy an insurance policy provision which incorporates a standard of criminal law. I believe there are at least three ways, however, in which the ruling in *Healthwise* may be deemed not to control here. First, as recognized by the majority, the Kentucky Supreme Court's subsequent decision in *Employers Insurance of Wausau v. Martinez*, 54 S.W.3d 142 (Ky.2001), adopts an "admission of guilt" exception to *Healthwise*'s requirement of a criminal adjudication. The majority finds, and I wholly agree, that there are ample admissions in the record before us to establish that Christopher Wilson's use of his grandfather's pickup truck was "unauthorized," and hence violative of Ky.Rev.Stat. § 514.100(1), and that these admissions, under *Martinez*, obviate the need for a formal adjudication of Christopher's guilt under the Kentucky Penal Code.

Even without the exception recognized in *Martinez*, however, I believe the result here would be no different. First, I question whether *Healthwise* dictates that we look solely to the Kentucky Penal Code to construe the "lawful possession" policy language at issue here. The policy language addressed in *Healthwise* expressly referenced "legal intoxication as defined by Kentucky law," and the policy in *Martinez* likewise required the "willful violation of a penal statute" to defeat coverage. Here, by contrast, the State Farm policy speaks of "lawful possession" of a vehicle. As

demonstrated through the various dictionary definitions offered by the parties, "lawful" does not equate merely to "not criminal," and one can act "unlawfully" without committing a criminal offense. *Cf. Kimberly & European Diamonds, Inc. v. Burbank*, 518 F.Supp. 599, 601–02 (W.D.Ky.1981) (discussing the tort of conversion under Kentucky law), *aff'd*, 684 F.2d 363 (6th Cir.1982); Restatement (Second) of Torts § 217 (setting forth the elements of a tort claim of trespass to chattels). Given this factual distinction between this case and *Healthwise* and *Martinez*, I do not believe that the Kentucky courts necessarily would require an adjudication or admission of criminal wrongdoing in order to conclude that Christopher Wilson was not in "lawful possession" of his grandfather's truck.

Next, I note that *Healthwise* looked to the Kentucky Penal Code, and then required an adjudication of guilt under this body of law, only *after* concluding that the "legal intoxication" policy language at issue in that case was ambiguous, and could be construed by reference to a variety of competing statutory standards. The same could be said of the "lawful possession" policy language at issue here—there are, as the District Court noted, a number of Kentucky statutes that arguably bear upon the question of "lawful possession"—but with one important difference. Notably, and in contrast to the circumstances presented in *Healthwise*, the Wilsons have failed to identify *any* standard of "lawful possession" under Kentucky law, whether within the Penal Code or elsewhere, that might plausibly encompass Christopher Wilson's use of his grandfather's vehicle. Thus, even under the most liberal rules of construction favoring the Wilsons, it simply is not possible to interpret the State Farm policy in a way that supports coverage.

Given these alternative paths to the same result, we should be hesitant, as a federal court sitting in diversity, to adopt a single, definitive construction of the decisions in *Healthwise* and *Martinez,* or to endorse any particular means of harmonizing these rulings. Rather, I believe that we should leave it to the state courts to further elucidate the law in this area. With this caveat, I join in the majority's decision.