OPINION
JANE B. STRANCH, Circuit Judge.
Medical Protective Company, Dr. Gregory Duma’s professional liability insurer, was contractually obligated to indemnify Duma for his malpractice liability in delivering Michelle Heinrich’s child while intoxicated unless, under a policy exclusion, the damages were “in consequence of the performance of a criminal act.” The insurer sought to disclaim coverage and the district court granted it summary judgment on the ground that Duma’s actions constituted the crime of wanton endangerment under Kentucky law. Because a finding of wanton endangerment was properly based upon Duma’s admissions, we must affirm the judgment of the district court.
I. FACTS
In July 2005, Gregory Duma, a physician, applied for and was issued professional liability insurance by Medical Protective Company (“MPC”). The policy included an exclusion stating that it did not cover “payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act.”
Duma was employed by St. Elizabeth Medical Center in Edgewood, Kentucky. On the morning of October 23, 2005, he examined Michelle Heinrich and induced labor. He then left the hospital and proceeded to drink a large quantity of vodka in a nearby park. He returned to the hospital that afternoon to deliver Heinrich’s baby, Cameron Heinrich. Both child and mother suffered labor-related injuries. During the delivery, Duma’s behavior was ordinary enough that no one stopped him from delivering Cameron. After the delivery, however, it was noticed that Duma smelled of alcohol, and so a blood alcohol test was administered. The test recorded a blood alcohol content of .27, well above the Kentucky legal limit of .08.
The Heinrich family sued Duma and the hospital in state court and MPC defended Duma. The jury found both Duma and the hospital at fault, and assigned punitive damages against Duma. The jury instructions provided that punitive damages were allowed only if the jury found that Duma *979 had acted in reckless disregard for the lives or safety of the Heinrichs.
In October 2008, MPC filed a complaint in district court asking the court to rescind and hold void Duma’s professional liability policy because he did not disclose his alcoholism, or, in the alternative, to find that MPC had no duty to indemnify Duma in the Heinrich litigation because the policy excluded damages resulting from a criminal act. MPC argued that Duma’s actions constituted wanton endangerment, a misdemeanor under Kentucky law. See Ky. Rev.Stat. § 508.070(1); Ky.Rev.Stat. § 501.020(3). All parties agreed that Kentucky law applied to the case. Michelle Heinrich, her husband Denny Heinrich, and Cameron Heinrich intervened in the case the following year.
Both sides moved for summary judgment and MPC’s motion was granted. The district court held that Duma’s admission “that he drank almost a fifth of vodka knowing full well that he would have to deliver a baby later that day” meant that his actions met the definition of wanton endangerment in the second degree. The district court also found that, on the facts presented, “no reasonable juror could find” that the damages the Heinrichs suffered were other than a consequence of Duma’s behavior, based in part on the fact that no evidence was presented to show that the injuries sustained by the Heinrichs “would have occurred regardless of Duma’s intoxication.”
Duma and the Heinrichs timely appealed both the grant of summary judgment for MPC and the denial of Duma’s cross motion.
II. ANALYSIS
Whether summary judgment was properly based on the policy exclusion depends on the meaning of the language of the contract — a legal issue. The first question is whether the words of the exclusion require some sort of criminal adjudication.
Kentucky courts demand that the applicability of an exclusion be unambiguous before it is honored. This is based on the twin cardinal principles that (1) insurance contracts must be construed “so that all doubts pertaining to coverage are resolved in the insured’s favor,” and (2) exclusions must be read to make insurance effective whenever reasonably possible. State Farm Mut. Auto. Ins. Co. v. Wilson, 26 Fed.Appx. 490, 494 (6th Cir.2002) (citing Ky. Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164, 166 (Ky.1992)). But “where the language of an insurance policy is clear and unambiguous, it cannot be construed to mean other wise than what it says.” Simpsonville Wrecker Serv., Inc. v. Empire Fire & Marine Ins. Co., 793 S.W.2d 825, 829 (Ky.App.1989) (internal citation omitted). “[Cjourts should not rewrite an insurance contract to enlarge the risk to the insurer.” St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 226-27 (Ky.1994) (citing U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc., 856 F.2d 31 (6th Cir.1988)).
In Healthwise of Kentucky, Ltd. v. Anglin, 956 S.W.2d 213, 215-16 (Ky.1997), the Kentucky Supreme Court refused to hold that an exclusion of coverage for injuries “sustained as a result of being under the influence of alcohol (legal intoxication as defined by Kentucky law)” applied to a man with a blood alcohol content (BAC) of .21 who was driving “at about 70 miles per hour in a 35 mile per hour zone and driving on the wrong side of the road.” The court determined that the language of the exclusion required a legal adjudication of the crime before the exclusion could be applied. Id. at 217. The court held:
*980 Kentucky law does not give a definition for legal intoxication which is exclusive to alcohol. That is, there is no statute that states, “Alcohol Intoxication means_” Instead, contained in Kentucky Revised Statutes are a number of statutes which make the state of alcohol intoxication, under varying circumstances, a punishable offense. It is from these statutes that the Court of Appeals adopted a definition for legal alcohol intoxication. The statute chosen by the Court of Appeals is particularly appropriate because it is limited solely to alcohol intoxication. Under the defining statute chosen by the Court of Appeals, the status of legal alcohol intoxication is determined through adjudication in a criminal proceeding. Thus, we agree with the Court of Appeals that for the exclusion to apply to Anglin “he must not only have acted in a manner described under KRS 222.202(1), but he must have been adjudicated guilty of such conduct.”
956 S.W.2d at 217-18 (emphasis added).
We addressed this issue in State Farm Mutual Automobile Insurance Co. v. Wilson, noting that the Kentucky Supreme Court did not explain how it determined from the language of Ky.Rev.Stat. § 222.202(1) that a criminal adjudication of guilt was required for the contract exclusion to apply. 26 Fed.Appx. at 496-97. Lacking such explanation, we compared the statutes at issue in both cases and determined that the Kentucky statute in Wilson, Ky.Rev.Stat. § 514.100(1), was similar enough to the Healthwise statute, Ky.Rev.Stat. § 222.202(1), to predict that the Kentucky Supreme Court would follow its Healthwise decision and hold that a criminal adjudication of guilt was also necessary in Wilson. Id. Specifically, we noted that the parallel structure of both statutes began, “A person is guilty of [this offense] when_” Wilson, 26 Fed.Appx. at 496-97; Ky.Rev.Stat. §§ 222.202(1), 514.100(1).
Such statutory analysis dictates the same result here. The Kentucky statute for wanton endangerment is similarly constructed, beginning, “A person is guilty of wanton endangerment in the second degree when....” Ky.Rev.Stat. § 508.070(1). Therefore, as we held in Wilson, if Health-wise were the Kentucky Supreme Court’s last word on this issue, that court would hold on these facts that Duma is not excluded from insurance coverage based on the criminal-act exclusion because there has been no criminal adjudication of guilt.
The Kentucky Supreme Court, however, had rendered another decision that also impacted this Court’s analysis in Wilson. It decided Employers Ins. of Wausau v. Martinez, 54 S.W.3d 142, 143 (Ky.2001), a cemetery burial misconduct case holding that a criminal adjudication of guilt is not always required in order to trigger a policy exclusion for “willful violation of a penal statute.” There, the Kentucky Supreme Court did not overrule Healthwise; it simply found a narrow exception to it, determining that when the insured admits all necessary elements of the relevant criminal statute, a criminal adjudication is unnecessary. Id. at 144. Based on a century-long practice of over burying the cemetery and reusing and reselling occupied graves, the court opined: “In this case, no question exists as to whether [the insured] violated a penal statute; such violations were admitted.” Id. We applied this analysis in Wilson and found that the insured’s admission in the answer to the complaint and the testimonial evidence amounted to an “effective admission of guilt” under the relevant Kentucky criminal statute. A criminal adjudication of guilt was, therefore, not required to trigger the vehicle insurance policy’s exclusion *981 for those “not in lawful possession” of the vehicle. 26 Fed.Appx. at 495, 497-98.
There has been no criminal adjudication of Duma’s guilt of the crime of wanton endangerment. Therefore, under Health-wise and Martinez, the policy exclusion for criminal acts does not apply here unless Duma’s testimony amounts to an effective admission of the elements of the crime of wanton endangerment, Ky.Rev.Stat. § 508.070a).[1]
Kentucky Revised Statute § 508.070(1) provides that a person is guilty of wanton endangerment “when he wantonly engages in conduct which creates a substantial danger of physical injury to another person.” The state court determination of Duma’s recklessness is not sufficient because Kentucky’s substantive criminal law draws a distinction between reckless conduct and wanton conduct. “A person acts recklessly with respect to a result or to a circumstance ... when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ky.Rev.Stat. § 501.020(4). “A person acts wantonly with respect to a result or to a circumstance ... when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.” Ky.Rev.Stat. § 501.020(3). Wanton conduct has a higher threshold of culpability attached to it under Kentucky law and, consequently, requires a showing of actual awareness of the risk on the part of the individual, not merely the presence of that risk. It is undisputed in this case that Duma’s conduct amounted to a “substantial and unjustifiable risk.” Therefore, this case turns on whether Duma admitted that he was actually aware of and consciously disregarded this risk.
The definition of “wantonly” includes a proviso: “A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.” Ky.Rev.Stat. § 501.020(3). When this provision is applicable, the elements of “voluntary intoxication” supplant the mental state or intent element in the definition of wantonly. Voluntary intoxication is defined as “intoxication caused by substances which the defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime.” Ky. Rev.Stat. § 501.010(4).
Duma admitted as part of his state-court trial strategy that he knew he was consuming alcohol while he was on call at the hospital. And the amount of alcohol that he drank — the majority of a fifth of vodka — was enough that he “ought to know” it would have “the tendency to cause intoxi *982 cation.” See Ky.Rev.Stat. § 501.010(4). His defense was instead based on the theory that his intoxication was not the cause of the harm to the Heinrichs.
Duma’s testimony that he did not believe that he would still be drunk at the time of the delivery is therefore immaterial. Whether Duma was actually aware of the risk his conduct created is irrelevant because Kentucky Revised Statute § 501.020(3) characterizes his conduct as wanton simply on the basis of his knowing self-intoxication and the objective fact that his conduct created a substantial risk of harm to another. Thus, Duma has admitted all the composite elements of the crime of wanton endangerment and, as a result, the Martinez exception to the Healthwise rule governs. See Martinez, 54 S.W.3d at 145.
In order for the criminal-act exclusion in Duma’s malpractice policy to apply, however, MPC must show not only that Duma committed the criminal act of wanton endangerment, but also that the Heinrichs’ “damages [we]re in consequence of the performance of [that] criminal act.” This issue was resolved in the present case by the state-court jury’s verdict in the trial between the Heinrichs and Duma. The jury found that Duma “failed to comply with his duty [to exercise that degree of care and skill ordinarily expected of a reasonably competent obstetrician under the same or similar circumstances] and that such failure was a substantial factor in causing injury ” to the Heinrichs.
We are bound by this factual finding. The substantial-factor standard is sufficient to support a finding that the injuries were “in consequence of’ Duma’s criminal act, since the policy language does not require that the criminal act be the sole factor causing the injuries. As such, the jury’s finding is sufficient to trigger the criminal-act exclusion in Duma’s malpractice insurance policy.
III. DISCOVERY ISSUE
Finally, to the extent that it makes any difference at this point, we reject the Heinrichs’ argument that the district court should have allowed more time for discovery. In November and December 2009, the Heinrichs filed a motion for extension of time to complete discovery and a motion to continue the discovery deadline, which the court granted. The Heinrichs served discovery on MPC on December 28, 2009. On January 6, 2010, MPC moved for summary judgment. Duma filed a cross-motion for summary judgment on January 25, 2010. On January 27, 2010, the Heinrichs filed a motion for an extension of time to respond to MPC’s motion. They argued that the information they requested from MPC would “be beneficial and necessary in responding to Plaintiffs[’] motion for summary judgment,” and so asked for a twenty-day continuance, until February 15, 2010, “to permit discovery to be had.” MPC claims that the Heinrichs received their requested discovery the following day, on January 28, 2010; the Heinrichs do not contest this fact. The Heinrichs filed no response to MPC’s motion for summary judgment.
The district court held a motion hearing on May 24, 2010. At the hearing, the court asked counsel for the Heinrichs whether the Heinrichs intended to have “an active role” in the summary judgment proceedings. Counsel responded that they would defer to counsel for Duma “and then make that assessment as the argument proceeds.” Eventually, they concluded they had nothing they wanted to add, after the judge asked both at the end of Duma’s argument and at the close of the hearing. In granting MPC’s motion for summary judgment on June 18, 2010, the district *983 court found that, because the Heinrichs’ motion for an extension of time was filed' six months earlier and because they had filed nothing in the interim, “this Court assumes that Counsel for the [Heinrichs] have decided not to file a separate response to [MPC’s] motion for summary judgment” and so denied the motion as moot.
The district court acted within its discretion in doing so. Discovery concluded on January 28, 2010. The Heinrichs had ample time after that point to respond to MPC’s motion for summary judgment if they so chose; they chose not to. The district court extended the opportunity to the Heinrichs again at the motion hearing in May to respond to MPC’s motion; again, they chose not to. Their January 27 motion asked only for additional time to receive discovery already requested; there is no mention of planning to request additional discovery. If the Heinrichs were to obtain any documentation to support their arguments, they would have received it on January 28, and so could have argued it at the motion hearing. The district court could reasonably conclude that the Hein-richs were not planning to file a response, and therefore did not abuse its discretion in denying their motion for an extension of time.
IV. CONCLUSION
We affirm the grant of summary judgment to MPC.

. The dissent urges that Martinez effectively limits the holding of Healthwise to its facts. We disagree based on the analysis in those cases. Additionally, such an overly broad reading of the unique facts in Martinez would result in a problematic procedure: where neither a criminal adjudication nor an admission is present, a civil jury would be permitted to determine if a particular criminal statute has been violated. The dissent's proposal was considered and rejected by the Kentucky Supreme Court in Healthwise:
Healthwise argues that a jury should be allowed to determine whether Anglin was legally intoxicated no matter what statute is used to define "legal intoxication.” We reject this argument. The standard of proof is significantly different between civil and criminal proceedings. Moreover, the stakes are significandy different in the two proceedings. Further, even if the jury were to be instructed on the higher standard on the question of legal intoxication, Anglin still would not have attained the status of being legally intoxicated because no criminal penalty would attach to the adjudication.
956 S.W.2d at 218.