NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0229n.06

Case No. 14-5955

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 25, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| KANIKA DEMBLA, | ) ) | |
| Intervening Defendant-Appellant. | ) ) | |

BEFORE: SILER, BATCHELDER, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Intervening defendant Kanika Dembla ("Dembla") appeals the district court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). The district court found no insurance coverage was available to Shaun Dunlap ("Shaun"), the driver of the vehicle that injured Dembla, under the State Farm policy at issue. For the following reasons, we **AFFIRM** the district court's grant of summary judgment in favor of State Farm.

**I.**

In 2012, Shaun lived with his parents, George and Judy Dunlap. State Farm issued an automobile insurance policy (the "Policy") to George Dunlap—the named insured—for his Ford

pickup truck for a six-month period, expiring on July 25, 2012. Shaun previously had insurance for his Pontiac, but State Farm cancelled the coverage in January 2012 for non-payment.

Amanda Robertson ("Amanda"), Shaun's friend, asked him to "house sit" at her parents' house to feed the dogs during the first week of July 2012 while she and her parents were on vacation. He previously had taken care of the Robertsons' pets on numerous occasions when the Robertsons were out of town.

Amanda's automobile and Mr. Robertson's pickup truck were at the Robertsons' house while they were out of town. The keys to Mr. Robertson's truck were in a kitchen cabinet.

On July 3, 2012, while house sitting, Shaun texted Amanda, saying: "Btw [by the way] if your car needs gas I'm happy to go fill it up lol ['laughing out loud']." Amanda responded by saying, "Haha[]. It's full. Thanks.:)" Shaun responded, "Ok. Just trying to be helpful." Both Amanda and Shaun testified that the suggestion that Shaun drive Amanda's car in the July 3 text exchange was a joke.

On July 7, 2012, at approximately 3:00 a.m., Shaun received a call from a friend who was intoxicated and needed a ride. When Shaun tried to leave the Robertsons' house to pick up his friend, he had trouble with the transmission in his Pontiac. Because he could not get his vehicle in reverse, he decided to drive Mr. Robertson's truck.[1] Shaun fell asleep at the wheel at approximately 6:30 a.m., crossed the center line, and hit another vehicle. Dembla, a passenger in the second vehicle, was seriously injured in the accident while the other three occupants were killed.

State Farm filed a complaint for declaratory judgment in the Eastern District of Tennessee against Shaun and his parents, requesting that the district court find "there is no

---

[1] The registration for Mr. Robertson's truck had expired at the time Shaun drove the vehicle.

coverage under the Policy in question to any of the Defendants and that therefore there is no duty on the part of State Farm to defend" Shaun or his parents. Dembla intervened, claiming "an interest relating to the property that is the subject of th[e] transaction."

State Farm moved for summary judgment, claiming that Shaun was not covered under the Policy because he was not in "lawful possession" of Mr. Robertson's truck at the time of the accident. Relying on *State Farm Mut. Auto. Ins. Co. v. Wilson*, 26 F. App'x 490 (6th Cir. 2002), the district court granted summary judgment in favor of State Farm. The court found that Shaun was not in "lawful possession" of Mr. Robertson's truck because he: (1) committed the tort of conversion; (2) committed the tort of trespass to chattel; (3) violated Tenn. Code. Ann. § 39-14-106 when he used the truck without Mr. Robertson's consent; and (4) violated Tenn. Code. Ann. § 55-4-101 when he drove Mr. Robertson's truck with an expired registration.

## II.

"We review a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

The Policy in this case defines "insured," in relevant part, as "*you* and *resident relatives* for: . . . the maintenance or use of: (1) a *non-owned car*; or (2) a *temporary substitute car*." The "Definitions" section of the Policy defines "non-owned car" and "temporary substitute car." "Non-Owned Car" means "a *car* that is in the lawful possession of *you* or any *resident relative* . . . ." "Temporary Substitute Car" means:

A *car* that is in the lawful possession of the *person* operating it and that:

  1. replaces *your car* for a short time while *your car* is out of use due to its:
       a. breakdown;
       b. repair;
       c. servicing;

      d.  damage;

      e.  or theft; and

2.  neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

The phrase "lawful possession," however, is not defined in the Policy.

Dembla claims that the district court improperly granted State Farm's motion for summary judgment because there is a genuine dispute whether Shaun was in "lawful possession" of the truck at the time of the accident. State Farm does not dispute that Shaun qualifies as a "resident relative" under the terms of the Policy. Furthermore, State Farm acknowledges that Mr. Robertson's truck qualifies as a "non-owed car" for which Shaun would be an "insured" under the Policy *if* Shaun was "in the lawful possession of" Mr. Robertson's truck at the time of the accident. And State Farm does not dispute that Shaun was in "possession" of the truck at the time of the collision.

Accordingly, the sole issue on appeal is whether there is a genuine issue of material fact as to whether Shaun's possession of Mr. Robertson's truck was "lawful." Based on the following, the district court correctly determined that no reasonable factfinder could find Shaun was in lawful possession of Mr. Robertson's truck at the time of the accident.

In diversity cases, we are bound to apply the same law as would be applied by the state courts. *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997). Dembla makes two primary arguments on appeal. First, she argues that the term "lawful possession" is ambiguous under Tennessee law. Second, she argues that Shaun was in "lawful possession" of the truck under Tennessee law, citing *Leverette v. Tennessee Farmers Mut. Ins. Co.*, No. M2011-00264-COA-R3-CV, 2013 WL 817230 (Tenn. Ct. App. Mar. 4, 2013), and *State Farm Mut. Auto. Ins.*

*Co. v. Hafley*, No. 1388, 1991 WL 46696 (Tenn. Ct. App. Apr. 8, 1991), to support her positions.[2]

As a threshold matter, Dembla states that the court in *Leverette* held that the term "lawful possession" was ambiguous. Interpretation of a written contract and whether a term within the contract is ambiguous is a question of law—not fact. *Leverette*, 2013 WL 817230 at *14 (citing *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002)). However, Dembla is arguing for a definition of "lawful possession" that falls outside the zone of reasonable interpretation under Tennessee case law.

Cases relied on by Dembla suggest that, at a minimum, the owner must have provided express or implied consent to the person who claims to be in lawful possession of the vehicle. *See*, *e.g.*, *Leverette*, 2013 WL 817230 at *14-15; *Hafley*, 1991 WL 46696 at *3-4. Some states have suggested that there is an additional requirement that the user of the vehicle be in compliance with other statutory requirements placed on drivers. *See Leverette*, 2013 WL 817230 at *13 (citing cases). Tennessee case law suggests that these additional requirements are not a factor in determining whether an individual is in lawful possession of the vehicle.[3] *Leverette*, 2013 WL 817230 at *12-14. Nonetheless, Tennessee case law supports the general consensus that absent legal title or consent—express or implied—there can be no lawful possession. *Hafley*, 1991 WL 46696 at *3.

---

[2] Dembla also argues that the district court's reliance on *Wilson* was improper. We agree that *Wilson* is inapposite because in that case we were tasked with determining whether the driver of the vehicle was in "lawful possession" under Kentucky law rather than Tennessee law. 26 F. App'x at 492.

[3] Consequently, the fact that Shaun drove the truck with expired tags in violation of Tenn. Code Ann. § 55-4-101 has no bearing on whether he was in "lawful possession" of the truck.

Here, Shaun did have not consent to use the vehicle. Shaun could not recall a single instance when Mr. Robertson or his wife allowed him to use one of their vehicles. Moreover, Shaun had never driven any vehicle owned by a member of the Robertson family. Finally, testimony about the July 3, 2012 text message exchange between Shaun and Amanda—which occurred just days prior to his taking Mr. Robertson's truck—reveals that the idea of Shaun's using one of the Robertsons' vehicles was a "joke."

The earliest articulation of the rule for implied permission in Tennessee is found in a Tennessee Court of Appeals case from 1936:

> [I]mplied permission must be the act or conduct of the [owner]. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the [owner], regardless of what permission was given by other persons. Of course, the [owner] could transmit his permission through an agent or in any other manner. The essential point is whether the [owner] exercises his personal discretion and grants his own permission to the particular person.

*Card v. Commercial Cas. Ins. Co.*, 95 S.W.2d 1281, 1285 (Tenn Ct. App. 1936). The Tennessee Supreme Court later adopted this rule and clarified its application in *Teague v. Tate*, 375 S.W.2d 840 (Tenn. 1964), and in *Schultz v. Tennessee Farmers Mutual Insurance Company*, 404 S.W.2d 480 (Tenn. 1966). Although these cases addressed somewhat different factual scenarios, the basic principles are the same. Implied permission does not exist where the owner of the vehicle had no knowledge of the defendant's use and could not have reasonably foreseen that such use would occur.

Moreover, it is worthwhile to note that the Tennessee Supreme Court analyzes the question of limited versus general permission in the same way that it analyzes the question of implied permission:

> [W]here one has only limited permission of the owner to use the car in a specified area for a limited time and particular purpose and does not have general discretion

> as to the use of the car, then the coverage of the omnibus clause is not extended to his use of the car any place or for a purpose not consented to nor reasonably contemplated by the owner in giving the initial permission.

*Moore v. Liberty Mut. Ins. Co.*, 246 S.W.2d 960, 961 (Tenn. 1952). These Tennessee cases have not been reversed and continue to represent the standards for determining the existence and scope of implied permission.

The only evidence of implied consent is Shaun's "belief" that he had permission to use Mr. Robertson's truck based on his friendship with Amanda and her family. But in *Hafley*, the Tennessee Court of Appeals held that a driver's subjective belief that he had consent to use the vehicle is irrelevant to the question of lawful possession. 1991 WL 46696 at *1. The driver may only introduce evidence of objective underlying facts that could support a finding of consent. *Id.* Therefore, the only admissible evidence that Mr. Robertson consented to Shaun's use of the truck is Shaun's pre-existing friendship with Amanda and her parents.

Dembla improperly relies on *Hafley* for the position that Shaun was in "lawful possession" of the truck. The analogous individual in *Hafley* received a broad mandate from the homeowner to protect the premises and the homeowner's personal property during the homeowner's absence. 1991 WL 46696 at *1-3. Furthermore, in *Hafley*, the court reasoned that the lawful possession of the vehicles only existed insofar as it facilitated the protection of the homeowner's premises or the vehicles themselves. *Id.* at *3.

Here, Shaun was at the Robertsons' home for a much narrower purpose than that of the analogous individual in *Hafley*. His assignment was to take care of the Robertsons' dogs—not to protect the premises in the Robertsons' absence. Shaun testified that at no point during the occasions he cared for the Robertsons' dogs was he responsible for the care of the vehicles.

Even if Shaun's duties mirrored the broad mandate in *Hafley*, which they did not, his use of the truck would have exceeded that scope. He used the truck solely for his benefit and not that of the Robertsons. Shaun admitted that his use of the car bore no relation to his agreed-upon duties at the Robertsons. Thus, no reasonable factfinder could find that Shaun was in lawful possession of Mr. Robertson's truck when he commandeered the vehicle to assist an intoxicated friend.

**AFFIRMED.**